UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA ALVAREZ,

              Plaintiff,        Civil Action No. 14-12429
                                  Honorable Patrick J. Duggan
                                  Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 14]**

Plaintiff Christina Alvarez ("Alvarez") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Alvarez is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be DENIED, Alvarez's Motion for Summary Judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

On July 5, 2011, Alvarez filed an application for DIB, alleging a disability onset date of January 31, 2011. (Tr. 184-85). This application was denied initially on October 3, 2011, and on reconsideration on December 30, 2011. (Tr. 92-96, 112-16). Alvarez filed a timely request for an administrative hearing, which was held on June 7, 2013, before ALJ Gregory Hamel. (Tr. 41-79). Alvarez, who was represented by attorney Jonathan Hausburg, testified at the hearing, as did a vocational expert. (*Id.*). On July 24, 2013, the ALJ issued a written decision finding that Alvarez is not disabled. (Tr. 24-35). On April 8, 2014, the Appeals Council denied review. (Tr. 2-6). Alvarez filed for judicial review of the final decision on June 20, 2014. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

>regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.    Background**

   *1.    Alvarez's Reports and Testimony[1]*

At the time of the administrative hearing, Alvarez was 43 years old, and at 5'8" tall she weighed 180 pounds. (Tr. 47, 53). She lived in an apartment with her boyfriend. (Tr. 53, 230). She had earned a Master's Degree in 2012, taking classes online on a part-time basis, and was taking classes toward a second Master's Degree. (Tr. 47-49, 53). She testified that she was last employed as a human resources administrative assistant, but she was "basically let go" in 2011 "because of [her] physical and mental problems." (Tr. 52, 197, 230).

Alvarez suffers from Charcot-Marie-Tooth disease[2], fibromyalgia, depression, and

---

[1] The ALJ found that Alvarez's mental impairments are non-severe. (Tr. 26-27). Alvarez does not challenge this conclusion and cites only evidence related to her physical impairments in her motion for summary judgment. Consequently, the Court will limit its discussion to Alvarez's physical impairments.

[2] Charcot-Marie-Tooth disease, "also known as hereditary motor and sensory neuropathy (HMSN) or peroneal muscular atrophy, comprises a group of disorders caused by mutations in genes that affect the normal function of the peripheral nerves. The peripheral nerves lie outside

trigeminal neuralgia. (Tr. 197). Alvarez testified that her recent surgeries have included "an operation on [her] brain for trigeminal neuralgia" in 2009, and fusion surgery on her right ankle in 2010. (Tr. 51-52). She testified that she cannot work because she has difficulty walking and suffers from pain throughout her body. (Tr. 60-61). She has difficulty lifting, squatting, bending, standing, walking, kneeling, using her hands, and climbing stairs. (Tr. 235). She can stand for 20 minutes at a time, sit for 20 minutes at a time (with her legs elevated), walk approximately ½ block, and – per her doctor's orders – lift no more than five pounds. (Tr. 55, 65-67). She takes several medications, which cause stomachaches, drowsiness, and increased numbness in her fingers. (Tr. 57-59, 62-63, 200). She uses a walker, which she testified was prescribed by her physician. (Tr. 65).

Alvarez further testified that she does not sleep well at night. (Tr. 67). When asked whether she can attend to her own personal care needs, Alvarez indicated that she uses a seat in the shower, cannot get out of the bathtub without assistance, and cannot change her earrings or button clothes (because of difficulty with her fingers). (Tr. 57). She is able to perform some chores, such as rinsing dishes and loading them in the dishwasher, preparing small meals, moving laundry, and grocery shopping (although she uses a sit-down cart). (Tr. 54-56, 232-33). She has a driver's license but does not drive often because "it's hard to feel where [her] feet are sometimes," and she has to be careful not to get her foot caught on the gas or brake pedals. (Tr. 55-56). She enjoys reading, watching movies, chatting with friends on the Internet, and riding her three-wheeled bicycle. (Tr. 53-54, 234).[3]

---

the brain and spinal cord and supply the muscles and sensory organs in the limbs. Disorders that affect the peripheral nerves are called peripheral neuropathies. http://www.ninds.nih.gov/disorders/Charcot_marie_tooth/detail_Charcot_marie_tooth.htm (last visited May 27, 2015).

[3] In a third party function report dated August 2, 2011, Alvarez's boyfriend, Paul Toth, generally

### 2. *Medical Evidence*

The Court has thoroughly reviewed Alvarez's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Alvarez is not disabled under the Act. At Step One, the ALJ found that Alvarez has not engaged in substantial gainful activity since January 31, 2011, the alleged onset date. (Tr. 26). At Step Two, the ALJ found that Alvarez has the severe impairments of Charcot-Marie-Tooth disease with neuropathic pain, right trigeminal neuralgia, and fibromyalgia. (Tr. 26-27). At Step Three, the ALJ found that Alvarez's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 27).

The ALJ then assessed Alvarez's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: only occasional climbing of stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders or similar devices; and only frequent (not constant) use of her hands for handling and fingering. (Tr. 28-33).

At Step Four, the ALJ determined that Alvarez is capable of performing her past relevant work as an administrative assistant and a sales marketing secretary. (Tr. 33-34). As a result, the ALJ concluded that Alvarez is not disabled under the Act. (Tr. 35).

**E. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative

---

corroborated Alvarez's statements. (Tr. 219-26).

decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

　　*1.     The ALJ's Failure to Evaluate Alvarez's Impairments
             In Light Of Listing 11.14 Constitutes Legal Error*

Alvarez argues that the ALJ's Step Three analysis and determination that her impairments do not meet or medically equal a listed impairment is not supported by substantial evidence. (Doc. #13 at 9-13). In this case, the ALJ specifically found at Step Two that Alvarez has the severe impairments of Charcot-Marie-Tooth ("CMT") disease with neuropathic pain, right trigeminal neuralgia, and fibromyalgia. (Tr. 26-27). Then, at Step Three, the ALJ concluded that Alvarez's severe impairments do not meet or medically equal the criteria of any listed impairments, "particularly the impairments in section 1.02 (major dysfunction of a joint), 1.04 (disorders of the back), 14.06 (connective tissue disease), and 14.09 (inflammatory arthritis)." (Tr. 28). Alvarez argues that the ALJ's failure to consider whether her impairments meet or medically equal the criteria of Listing 11.14 (peripheral neuropathies) constitutes legal error. (Doc. #13 at 9-13). The Court agrees.

　　Under the theory of presumptive disability, a claimant is eligible for benefits if she has an

impairment that meets or medically equals a listed impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his Step Three findings is error. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 F. App'x at 416; *Tapp v. Astrue*, 2011 WL 4565790, at *5 (E.D. Ky. Sept. 29, 2011) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").

Thus, in numerous cases similar to this one, courts have recognized that an ALJ's failure to explicitly consider whether a claimant's impairments meet or medically equal a listed impairment constitutes legal error. For example, in *Bolla v. Comm'r of Soc. Sec.*, 2012 WL 884820, at *6-8 (E.D. Mich. Feb. 3, 2012), the ALJ concluded at Step Two that the plaintiff had the severe impairments of multiple sclerosis and depression, but then simply stated, in conclusory fashion, that "the impairments, or combination of impairments, do not meet or medically equal the specific criteria of 1.00 Musculoskeletal Symptoms, 11.00 Neurological, 12.00 Mental Disorders." *Id.* at *6. The ALJ specifically considered the plaintiff's depression in light of Listing 12.04 (affective disorders), but did not consider any other Listing – including Listing 11.09 (multiple sclerosis) – in any detail whatsoever. *Id.* In finding the ALJ's Step Three analysis insufficient under the above standards, the *Bolla* court held that the "ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact …." *Id.* Consequently, the *Bolla* court determined

that remand was appropriate. *Id.* at *8.

Similarly, in *Christephore*, *supra*, the court held that the ALJ erred in failing "to evaluate (or even mention) the relevant listing" when determining medical equivalence at Step Three. *Christephore*, 2012 WL 2274328, at *5. In that case, the ALJ concluded that the plaintiff had the severe impairment of HIV, but then failed to consider whether the plaintiff met or medically equaled Listing 14.08 (HIV infection), saying only that the plaintiff's impairments did not meet or medically equal Listing 14.00 (Immune System Disorders). *Id.* at *5-6. In concluding that the ALJ erred, the court explained:

> While the ALJ identified Plaintiff's HIV as a severe impairment at Step Two, he failed to discuss the relevant listing – 14.08 – in his Step Three analysis. The Commissioner emphasizes that the ALJ expressly stated Plaintiff's impairments do not meet or medically equal the criteria of 14.00 (Immune System Disorders). This is insufficient. The ALJ does not evaluate Plaintiff's physical symptoms in relation to those described in 14.00 and does not articulate his reasons for finding that Plaintiff's symptoms do not meet or equal those criteria. His conclusory, one-sentence statement that Plaintiff's impairments do not meet or medically equal the criteria of 14.00 is contrary to the requirements that ALJs explain the reasons for their decisions.

*Id.* at *6. A similar conclusion was reached in *M.G.*, where "the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that [the claimant] did not meet or medically equal a Listing. Nor did the ALJ even identify which Listing(s) [claimant's] impairments were compared with." *M.G.*, 861 F. Supp. 2d at 858.

In this case, the ALJ expressly found that Alvarez suffers from CMT disease with neuropathic pain, right trigeminal neuralgia, and fibromyalgia. (Tr. 26-27). However, he failed to consider whether these impairments meet or medically equal Listing 11.14 (peripheral neuropathies) – indeed, he failed to even mention this Listing. The ALJ's failure in this respect constitutes legal error. *See, e.g.*, *Christephore*, 2012 WL 2274328, at *7; *M.G.*, 861 F. Supp. 2d

9

at 858-59; *Bolla*, 2012 WL 884820, at *6-8.

## 2. The ALJ's Error Was Not Harmless

This Court will not, however, overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G.*, 861 F. Supp. 2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original). In short, the case law discussed in the preceding section simply describes the minimum level of articulation an ALJ must provide regarding his Step Three analysis. In *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011), the court explained that the Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Staggs*, *supra* at *3 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). The *Staggs* court further stated, "Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Id.* (citing *Bledsoe, supra* at 411); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL 4897364, at *6 (E.D. Mich. Sept. 14, 2012). Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [he] *would have* found the claimant not disabled." *M.G.,* 861 F. Supp. 2d at 861 (emphasis in original). Conversely, remand is appropriate in cases where the district court's review of the ALJ's

10


decision and the record evidence leaves open the possibility that a Listing is met. *See Reynolds*, 424 F. App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).

In order for Alvarez to meet the criteria of Listing 11.14, she must show that she has peripheral neuropathies with "disorganization of motor function," as described in Listing 11.04B, in spite of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14. Section 11.04B then requires evidence of "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.04B. And, finally, Listing 11.00C states:

> *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00C (emphasis in original).

It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, a thorough discussion of the medical

evidence at least leaves open the possibility that Alvarez could be found to meet the requirements of Listing 11.14. *See Reynolds*, 424 F. App'x at 416; *May*, 2011 WL 3490186, at *9.

By way of background, the ALJ noted that medical records establish that Alvarez "was diagnosed with [CMT], trigeminal neuralgia, neuropathic pain, and bilateral foot pain well before her alleged onset date [January 31, 2011] …." (Tr. 29 (citing Tr. 265-300)). In addition, the ALJ noted that Alvarez underwent right ankle surgery in August 2010 to address a CMT deformity. (Tr. 29-30 (citing Tr. 302-10)).

On December 16, 2011, Alvarez presented to Munir Rizkallah, M.D., for a consultative physical examination. (Tr. 328-35). Alvarez reported her history of CMT from childhood, previous foot and ankle surgeries, and residual foot pain. (Tr. 328). Foot and toe deformities (including hammer toes) reportedly made her "very unstable when she walks," and Dr. Rizkallah noted that Alvarez had been using a cane since her last surgery for stability and balance. (*Id.*). On examination, Alvarez was "able to walk, but [was] a bit off balance." (Tr. 329). She could not squat or heel-toe walk. (*Id.*). She used a cane for walking, which Dr. Rizkallah opined was "medically necessary." (*Id.*). However, she needed no help changing for the exam or getting on or off the exam table, and was able to rise from a chair without difficulty. (*Id.*). The musculoskeletal examination revealed normal ranges of motions of the spine, shoulders, elbows, wrists, hips, and knees bilaterally. (Tr. 330). Her right ankle was completely immobile – with no dorsiflexion, plantar flexion, inversion, or eversion – but she had full range of motion of her left ankle. (*Id.*). No sensory deficits were noted, and she had 5/5 strength in the upper extremities, 4/5 in the lower extremities, and 5/5 grip strength bilaterally. (*Id.*). However, Dr. Rizkallah was unable to elicit deep tendon reflexes in the lower extremities, and he noted that

"she had some wasting of the muscles in the lower extremities with stork legs and the toes were abnormal with hammer toes deformed and there was no mobility of her toes." (*Id.*).

On November 29, 2012, Alvarez saw Antony Sankoorikal, M.D., for complaints of pain, numbness in her extremities, fatigue, morning stiffness, and weakness. (Tr. 386-88). On examination, her knees were tender, her soft tissue had "multiple tender points," and she had left foot drop and weakness in both legs. (Tr. 386). She was assessed with unspecified myalgia and myositis and peroneal muscular atrophy and placed on Gabapentin. (*Id.*).

Alvarez also saw podiatrist Dr. Patrick Chernesky on December 28, 2012. (Tr. 360-61). Although Dr. Chernesky's notes are largely illegible, it appears that he found that Alvarez "can't stand on feet or walk without pain," and that he prescribed a walker for her.[4] (Tr. 361). A few days later, Dr. Chernesky opined that Alvarez suffers from peripheral neuropathy, which results in significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. (Tr. 359). Dr. Chernesky further opined that Alvarez cannot lift more than five pounds and can never bend, stoop, or balance. (*Id.*). When asked how many hours Alvarez can work in one day, Dr. Chernesky indicated "none." (*Id.*).

As set forth above, in order for Alvarez to meet the criteria of Listing 11.14, she must show that she has peripheral neuropathies with "disorganization of motor function" (described as "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in

---

[4] In his decision, the ALJ found "no discernible evidence" that Alvarez was, in fact, prescribed a walker at this visit. (Tr. 30). This Court's review of Dr. Chernesky's notes suggests otherwise. (Tr. 361). Regardless, Social Security Ruling 96-5p provides that if an ALJ cannot ascertain the basis of a treating physician's opinion from the record, he must make "every reasonable effort" to re-contact the source for clarification. *See Soc. Sec. Rul. 96-5p*, 1996 WL 374183, at *6 (July 2, 1996). On remand, the ALJ should take steps to clarify the contents of Dr. Chernesky's notes before simply discounting his opinion as inconsistent with his "own treatment notes." (Tr. 31).

sustained disturbance of gross and dexterous movements, or gait and station ….").  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14.  When comparing the medical evidence discussed above to the requirements of this Listing, it is apparent that Alvarez has offered evidence at least tending to satisfy each of these requirements, such that the Court cannot conclude that the ALJ's failure to evaluate her impairments in light of this Listing was harmless.

Specifically, Alvarez suffers from CMT, a disease which, by definition, affects the peripheral nerves (disorders that affect the peripheral nerves are called peripheral neuropathies).[5]  Moreover, the ALJ specifically concluded that Alvarez suffers from the severe impairment of CMT *with neuropathic pain*, further evidence that he believed Alvarez has peripheral neuropathies.  (Tr. 26-27).  The Court is not persuaded by the Commissioner's argument that the record "contains no concrete evidence of dysfunction of a nerve, such as nerve conduction testing or electromyography" (Doc. #14 at 20), as there is no indication in the Listing that such test results are required, and the Commissioner has cited no authority for such a proposition.  For these reasons, Alvarez has established the existence of peripheral neuropathies, which satisfies the first element of Listing 11.14.

In addition to evidence of peripheral neuropathies, Listing 11.14 requires evidence of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14.  The Commissioner concedes that the record shows the requisite "significant and persistent disorganization of function" in one extremity – namely, Alvarez's right foot and ankle, which was the subject of fusion surgery in 2010.  (Doc. #14 at 21 (citing Tr. 50, 303)).  Indeed, the consultative examiner, Dr. Rizkallah noted that Alvarez's right

---

[5] http://www.ninds.nih.gov/disorders/Charcot_marie_tooth/detail_Charcot_marie_tooth.htm (last visited May 27, 2015).

ankle was "immobile with no dorsiflexion, no plantar flexion, no inversion, and no eversion." (Tr. 330). The Commissioner argues, though, that there is no evidence of "significant and persistent disorganization of function" in Alvarez's left lower extremity. (Doc. #14 at 21-22). The Court disagrees. Dr. Rizkallah noted on examination that he was unable to elicit deep tendon reflexes in either of Alvarez's lower extremities. (Tr. 330). Additionally, he noted "wasting of the muscles in the lower extremities with stork legs and the toes were abnormal with hammer toes deformed and there was no mobility of her toes." (*Id.*). Moreover, Dr. Sankoorikal observed that, on examination, Alvarez had "left foot drop" and "weakness of both legs." (Tr. 386). These facts, taken together, certainly suggest that, had the ALJ properly considered Listing 11.14, he could have found evidence of "significant and persistent disorganization of function" in both of Alvarez's lower extremities.

The Commissioner also points out that Listing 11.14, incorporating Section 11.00C by way of Section 11.04B, calls for an assessment of the degree of the impairment at issue, depending on the degree to which it interferes with Alvarez's locomotion. (Doc. #14 at 21-22). According to the Commissioner, the evidence shows that Alvarez has had "relatively little difficulty with walking" following her 2010 right ankle fusion surgery. (*Id.*). Again, the Court disagrees. The consultative examiner, Dr. Rizkallah, noted that Alvarez was able to walk but was "a bit off balance," and he opined that her continued use of a cane was medically necessary. (Tr. 329). Moreover, Alvarez testified that her podiatrist, Dr. Chernesky, prescribed her a walker in December 2012, which certainly appears to be borne out by the record evidence. (Tr. 51, 361). A few days later, Dr. Chernesky opined that Alvarez suffers from peripheral neuropathy, which results in significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. (Tr.

359).

In summary, there is no dispute that at least some of the criteria of Listing 11.14 are satisfied, and certainly enough evidence from which the ALJ could find that all of the Listing's criteria are satisfied. As set forth above, Alvarez suffers from CMT, a disease that affects the peripheral nerves (peripheral neuropathy). The Commissioner concedes that there is evidence of "significant and persistent disorganization of motor function" in Alvarez's right foot and ankle, and the Court notes that there is some evidence of the same on the left side. (Tr. 330 ("wasting of the muscles in the lower extremities with stork legs" and "no mobility of her toes"), 386 ("left foot drop" and "weakness of both legs")). Assessing the degree of Alvarez's impairment, it certainly appears that she has significant difficulties with locomotion, as Dr. Rizkallah opined that her use of a cane is medically necessary, and Dr. Chernesky seems to have prescribed a walker. (Tr. 51, 329, 361). Viewing the record as a whole, then, it appears that had the ALJ properly considered Alvarez's CMT in light of Listing 11.14, he could very well have determined that Alvarez met or medically equaled[6] that Listing's criteria.

For these reasons, the Court cannot conclude that the ALJ's error in failing to consider Alvarez's impairments in light of Listing 11.14 was harmless. Regardless of how the ALJ might ultimately decide Alvarez's claim, at this juncture, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that Alvarez does not

---

[6] Even if Alvarez cannot demonstrate that she meets the criteria of Listing 11.14, she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Alvarez must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

meet or medically equal this Listing.[7] And, if he does find that the evidence establishes that Alvarez meets or medically equals Listing 11.14, then Alvarez would be presumptively entitled to benefits. *See Christephore*, 2012 WL 2274328, at *6. Thus, because the Court cannot say that the ALJ's error was harmless, remand is appropriate. *See Reynolds*, 424 F. App'x at 416.[8]

### III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be DENIED, Alvarez's Motion for Summary Judgment [13] be GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Report and Recommendation.

Dated: May 28, 2015                                                        s/David R. Grand
Ann Arbor, Michigan                                                      DAVID R. GRAND
                                                                                        United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail

---

[7] Nor, as noted above, *supra* at 8, is it the Court's role to make such factual determinations in the first instance. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Bolla*, 2012 WL 884820, at *6.

[8] Alvarez advances other arguments before this Court, including an argument that remand is appropriate because the ALJ erred in failing to obtain an expert medical opinion regarding medical equivalency. (Doc. #13 at 10-11). Because the Court is remanding on other grounds, however, it need not address these arguments in detail.

to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 28, 2015.

    s/Eddrey O. Butts
    EDDREY O. BUTTS
    Case Manager